FILED

16 AUG 26 PM 12:03

CLERK, U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FT. MYERS, FLORIDA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

| | |
|---|---|
| GREGG RICHARDSON, individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>THOROUGHBRED RESEARCH GROUP, INC., a Kentucky corporation,<br><br>*Defendant.* | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL**<br><br>2:16-CV-656-FtM-99CM |

Plaintiff Gregg Richardson ("Richardson" or "Plaintiff") brings this Class Action Complaint and Demand for Jury Trial ("Complaint") against Defendant Thoroughbred Research Group, Inc. ("Thoroughbred Research" or "Defendant") to stop Thoroughbred Research's practice of making unsolicited autodialed calls to the cellular telephones of consumers nationwide and to obtain redress for all persons injured by its conduct. Plaintiff, for his Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

### NATURE OF THE ACTION

1. Defendant Thoroughbred Research is in the business of conducting telephone surveys by making autodialed calls to thousands of consumers nationwide.

2. To collect survey data, Defendant repeatedly makes autodialed telephone calls to the cellular telephones of Plaintiff and the other members of the putative Classes without consent, all in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA").

3. By making the telephone calls at issue in this Complaint, Defendant caused Plaintiff and the members of the Classes actual harm and cognizable legal injury. This includes the aggravation and nuisance and invasions of privacy that result from the receipt of such calls, in addition to a loss of value realized for the monies consumers paid to their wireless carriers for the receipt of such calls. Furthermore, the calls interfered with Plaintiff's and the other Class members' use and enjoyment of their cellphones, including the related data, software, and hardware components. Defendant also caused substantial injury to their phones by causing wear and tear on their property, consuming battery life, and appropriating cellular minutes.

4. The TCPA was enacted to protect consumers from unsolicited and annoying telephone calls like those alleged in this case. In response to Defendant's unlawful conduct, Plaintiff files the instant lawsuit and seeks an injunction requiring Defendant to cease all unsolicited telephone calling activities to consumers as complained of herein and an award of statutory damages to the members of the Classes under the TCPA, together with costs and reasonable attorneys' fees.

## PARTIES

5. Plaintiff Gregg Richardson is a natural person and citizen of the California.

6. Defendant Thoroughbred Research Group, Inc. is a company existing under the laws of Kentucky with headquarters located at 1941 Bishop Lane, Suite 1017, Louisville, Kentucky 40218. Defendant operates two call centers in Florida—in Cape Coral, Florida and in Fort Myers, Florida.

## JURISDICTION AND VENUE

7. This Court has federal subject matter jurisdiction under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which is a federal statute.

8. The Court has personal jurisdiction over Thoroughbred Research because Defendant committed tortious acts in Florida and Defendant calls consumers in this District. Defendant also owns and operates two call centers in this District. Its contacts with this District are continuous and systematic.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendant Thoroughbred Research does business in this District, operates two call centers in this District, and the causes of action arose, in substantial part, in this District.

## COMMON FACTUAL ALLEGATIONS

10. Defendant does business as a telephone research service company that conducts telephone surveys for business and political purposes using widespread telephone survey campaigns through an automatic telephone dialing system ("ATDS")[1] on a broad range of topics from local issues, national questions, medical surveys, retail preferences, and more.

11. In placing the calls that form the basis of this Complaint, Defendant utilized an automatic telephone dialing system. Specifically, the hardware and software used by Defendant

---

[1] It is without argument that Defendant uses an ATDS. *See* http://www.nraa.org/files/2014%20ICH%20CAHPS/Thoroughbred_Proposal_-_RSE_ICH_CAHPS_RFP_Submisson.pdf ("Thoroughbred uses CfMC's computer-assisted telephone interviewing (CATI) system with a Pro TS dialer for all of its interviewing stations (currently over 200 stations)" – Company description; *See* http://www.indeed.com/cmp/Thoroughbred-Research-Group/reviews ("I would call people (numbers generated from a random U.S. calling list) to ask them their opinion of different services and products." – Employee description of company); *See* https://www.linkedin.com/in/amber-nichy-ab2bb390 ("Contacted consumers via random number generator." – Job description from former employee)

3

has the capacity to generate and store random numbers, and/or receive and store lists of telephone numbers, and to dial such numbers, *en masse*, in an automated fashion without human intervention. Defendant's automated dialing equipment also is, or includes features substantially similar to, a predictive dialer, meaning that it is capable of making numerous phone calls simultaneously and automatically connecting answered calls to then available callers and disconnecting the rest (all without human intervention).

12. When placing these calls to consumers, Defendant fails to get the consent of cell phone owners/users to make such calls required by the TCPA.

13. Indeed, instead of getting the express consent required by the TCPA, Defendant is known to use so-called "random digit dialing" as part of their surveys:

- "Connect Alaska conducted random digit dial telephone surveys of adult heads of households across Alaska. This sample included 1,008 adults age 18 or older who were contacted via landline and 192 adults who were contacted via cell phone… Surveys were conducted by Thoroughbred Research."[2]
- "Dr. Hamilton was hired to design and analyze the results of a change of venue survey concerning a highly publicized 2014 Kentucky murder case. Thoroughbred Research Group, a Louisville polling company, made calls using random-digit dialing to reach landlines and cell phones."[3]
- "Between September 18 and November 12, 2014, Connect Ohio conducted a random digit dial telephone survey of 1,012 adults across the state. Of the 1,012 respondents randomly contacted statewide, 200 were called on their cellular phones, and 812 were contacted via landline telephone…Thoroughbred Research Group, located in Louisville, Kentucky, conducted the surveys in English."[4]
- "With regard to the 'random telephone interviews' conducted by the Thoroughbred Research Group…Thoroughbred Research Group interviewed 1,675 Columbia Gas of Kentucky customers in 2012."[5]
- "telephone outreach to the offices of randomly selected providers listed on the website. The calls are conducted by representatives of Thoroughbred Research, the vendor selected by the Blue Cross and Blue Shield Association."[6]

---

[2] http://www.connectak.org/research/residential-survey-methodology
[3] http://www.thejuryexpert.com/2015/12/revealing-juror-bias-without-biasing-your-juror-experimental-evidence-for-best-practice-survey-and-voir-dire-questions/
[4] http://connectohio.org/research/residential-survey-methodology
[5] http://psc.ky.gov/pscscf/2013%20cases/2013-00167/20130802_Columbia_Gas_Response_to_AG_Data_Request_Book_1.pdf

14. While this "random dialing" method of collecting survey responses may be within the letter of the law for calls placed to landline ("wireline") telephones, the same calls to cell ("wireless") phones are specifically not permitted without some form or prior express consent. As explained by the Federal Communications Commission ("FCC") in its 2012 order:

> Additionally, we note that many commenters expressed concern about obtaining written consent for certain types of autodialed or prerecorded calls, including debt collection calls, airline notification calls, bank account fraud alerts, school and university notifications, research or survey calls, and wireless usage notifications. Again, such calls, to the extent that they do not contain telemarketing messages, would not require any consent when made to residential wireline consumers, but *require either written or oral consent if made to wireless consumers* and other specified recipients.[7] [Emphasis added].

15. Defendant has no prior express consent (oral or written) to make these autodialed survey calls to cell phone numbers.

16. Consumer complaints about Defendant's invasive and repetitive calls are legion. Some examples from those consumer complaints follow:

- I wish for once this damn company would listen to us! This number 270-650-2080 calls and NEVER leaves a message and calls twice a day!!;[8]

- Survey company. Called in the middle of the night to ask about my experience with vectren. Was very rude and hateful;[9]

- Have called at least 3 times in the last 2 or 3 days. I told them to take me off their list. She said no. Really??;[10]

- I asked them not to call and I was on do [not] call list and they said they do [not] have to comply. They are calling my husband and my cell phones &

---

[6] https://www.nebraskablue.com/~/media/pdf/provider/update-newsletters/spring2011update.pdf
[7] In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, FCC 12-21, CG Dkt. 02-278.
[8] http://whocallsme.com/Phone-Number.aspx/2706502080/5
[9] *Id.*
[10] https://www.everycaller.com/phone-number/1-239-673-5213/

refuse to stop;[11]

- I received two calls today (10/12/2012) from this number to my cell phone. In both instances, no message was left;[12] and

- This company (Thoroughbred Research Group) has called my cellphone about a dozen times from three different numbers, and they never leave a message. After I figured out who it was, I contacted the entire leadership team by e-mail and received a response from Brad Larson that I would be removed from their phone list on 13 July 2015. However, I still received a phone call from the group tonight at 7:44 PM. Looks like they don't honor removal requests.[13]

17. Defendant thus has knowledge that it has placed telephone calls to the cell phones of consumers without consent and in the face of dozens of consumer complaints.

18. In making the phone calls at issue in this Complaint, Defendant and/or its agents utilized an autodialing system to dial and transmit the calls to cellular phones. Specifically, the hardware and software used by Thoroughbred Research has the present capacity to store, produce, and dial random or sequential numbers, and/or receive and store lists of telephone numbers, and to dial such numbers, *en masse*, in an automated fashion without human intervention. Defendant's automated dialing equipment includes features as a predictive dialer, inasmuch as it is capable of making numerous calls simultaneously (all without human intervention).

19. Defendant knowingly made (and continues to make) telemarketing calls without the prior express consent of the call recipients and knowingly continues to call them after requests to "Stop." As such, Defendant not only invaded the personal privacy of Plaintiff and members of the Classes but also intentionally and repeatedly violated the TCPA.

---

[11] *Id.*
[12] http://whocallsme.com/Phone-Number.aspx/2706502080/3
[13] http://800notes.com/Phone.aspx/1-270-650-2080/11

## FACTS SPECIFIC TO PLAINTIFF GREGG RICHARDSON

20. On August 24, 2005, Plaintiff Richardson registered his cellular phone number on the national do not call registry to avoid receiving unsolicited calls on his cellular phone.

21. In April 2016, Plaintiff began to receive regular auto-dialed calls on his cellular phone from Defendant.

22. Plaintiff heard a noticeable delay before being connected to an operator when Defendant made unsolicited telemarketing calls to his cellular phone. Such a delay is strongly suggestive of an ATDS.

23. When Plaintiff was finally connected to one of Defendant's employees, the telemarketers asked for Plaintiff's wife, Jeanette. Plaintiff has repeatedly informed Defendant that his wife is ill and cannot answer the phone as it is too difficult for her, but the calls continue.

24. Defendant claims to be calling in order to perform a "medical survey" on Jeanette, Plaintiff's wife.

25. Over a period of 2 months, Plaintiff received between 6 – 10 calls from Defendant.

26. Plaintiff answered each of the calls, and asked each time for Defendant to stop calling him.

27. Plaintiff does not have a relationship with Thoroughbred Research, has never provided his telephone number directly to Defendant, and has never requested that Thoroughbred Research place calls to him or offer its services. Simply put, Plaintiff has never provided any form of prior express written consent to Defendant to place calls to him and has no business relationship with Defendant.

28.     Defendant at all times are and were aware that the above-described telephone calls were and are being made to consumers like Plaintiff who had not consented to receive them and who had expressly requested that the calls stop.

## CLASS ALLEGATIONS

29.     **Class Allegations**: Plaintiff Richardson brings this action pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3) on behalf of himself and two classes defined as follows:

> **Autodialed No Consent Class**: All persons in the United States who from a date four years prior to the filing of the initial complaint in this case through the present who: (1) Thoroughbred Research called, (2) on the person's cellular telephone number, (3) from the phone number 270-650-2080 or a different number owned or controlled by Thoroughbred Research, and (4) for whom Defendant claims it obtained prior express consent in the same manner as Defendant claims it supposedly obtained prior express consent to call the Plaintiff.

> **Stop Call Class**: All persons in the United States who from a date four years prior to the filing of the initial complaint in this case through the present who: (1) Thoroughbred Research called, (2) on the person's cellular telephone, (3) after the person informed Thoroughbred Research that s/he no longer wished to receive calls from Thoroughbred Research.

The following people are excluded from the Classes: any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons. Plaintiff anticipates the potential need to amend the Class Definitions following the completion of class discovery regarding the size and scope of the Classes.

30. **Numerosity**: The exact sizes of the Classes are unknown and are unavailable to Plaintiff at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendant Thoroughbred Research made telephone calls to thousands of consumers who fall into the definition of the Classes. Members of the Classes can be easily identified through Thoroughbred Research's records.

31. **Commonality**: There are several questions of law and fact common to the claims of Plaintiff and the Classes on which every class member's claim will either succeed or fail, and that will be proven using common evidence. Such common questions for the Classes include, without limitation:

(a) Whether Defendant's conduct violated the TCPA;

(b) Whether Defendant systematically made telephone calls to cellphone users who did not previously provide Defendant and/or its agents with their prior express consent to receive such phone calls;

(c) Whether Defendant made the calls with the use of an ATDS;

(e) Whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct; and

(f) Whether Defendant systematically made telephone calls to consumers after they explicitly asked not to be called from Defendant

32. **Typicality**: Plaintiff's claims are typical of the claims of the other members of the Classes. Plaintiff is a member of the Classes, and if it violated the TCPA to call Plaintiff then it violated the TCPA to call the other class members. Plaintiff and the Classes sustained damages as a result of Defendant's uniform wrongful conduct during transactions with Plaintiff and the Classes.

33.     **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Classes and has retained counsel competent and experienced in complex class actions. Plaintiff has no interest antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiff.

34.     **Policies Generally Applicable to the Classes**: This class action is appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Classes as respective wholes thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members and making final injunctive relief appropriate with respect to the Classes as respective wholes. Defendant's practices challenged herein apply to and affect the Class members uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes as respective wholes, not on facts or law applicable only to Plaintiff.

35.     **Predominance**: The common questions of law and fact set forth above predominate over any individual issues. Whether Defendant properly obtained prior express consent to call goes to the very heart of the case and is a fact on which all class members' claims hinge. As such, the common issues predominate over any supposed individualized issues.

36.     **Superiority and Manageability**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy given that joinder of all parties is impracticable. The damages suffered by the individual members of the Classes will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual members of the Classes to obtain effective relief from Defendant's misconduct. Even if members

of the Classes could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

**FIRST CAUSE OF ACTION**
**Violation of 47 U.S.C. § 227**
**(On behalf of Plaintiff and the Autodialed No Consent Class)**

37. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

38. Defendant made unsolicited and unwanted autodialed calls to telephone numbers belonging to Plaintiff and the other members of the Class—without their prior express consent.

39. Further, Defendant made the telephone calls using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers, *en masse*. Defendant utilized equipment that made the telephone calls to Plaintiff and other members of the Class simultaneously and without human intervention.

40. By making unsolicited telephone calls to Plaintiff and members of the Class's cellular telephones without prior express consent, and by utilizing an ATDS, Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii).

41. As a result of Defendant's unlawful conduct, Plaintiff and the members of the Class suffered actual damages in the form of monies paid to receive the unsolicited telephone calls on their cellular phones and, under Section 227(b)(3)(B), are each entitled to, *inter alia*, a minimum of $500 in damages for each such violation of the TCPA.

42. Should the Court determine that Defendant's conduct was willful and knowing, the Court may, pursuant to Section 227(b)(3), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Class.

### SECOND CAUSE OF ACTION
### Violation of 47 U.S.C. § 227 *et seq.*
### (On behalf of Plaintiff and Autodialed Stop Call Class)

43. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

44. Defendant made unsolicited and wanted telemarketing calls to telephone numbers belonging to Plaintiff and the other members of the Class on their cellular telephone *after* the person had informed Defendant that s/he no longer wished to receive such calls from Defendant.

45. Defendant made the telephone calls using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers, *en masse*.

46. By making unsolicited telephone calls to Plaintiff and members of the Class's cellular telephones after they requested to no longer receive calls, Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii) by continuing to call them without prior express consent.

47. As a result of Defendant's unlawful conduct, Plaintiff and the members of the Class suffered actual damages in the form of monies paid to receive the unsolicited telephone calls on their cellular phones and, under Section 227(b)(3)(B), are each entitled to, inter alia, a minimum of $500 in damages for each such violation of the TCPA.

48. Should the Court determine that Defendant's conduct was willful and knowing, the Court may, pursuant to Section 227(b)(3), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Class.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Gregg Richardson, individually and on behalf of the Classes, prays for the following relief:

1. An order certifying the Classes as defined above, appointing Plaintiff Gregg Richardson as the representative of the Classes and appointing his counsel as Class Counsel;

2. An award of actual and statutory damages;

3. An injunction requiring Defendant and its agents to cease all unsolicited telephone calling activities, to honor do not call requests, and to provide a domestic number for opting out, and otherwise protecting the interests of the Classes;

4. A declaratory judgment declaring that Defendant's calls violated the TCPA, that Defendant's equipment constitutes an automatic telephone dialing system under the TCPA, that Defendant failed to obtain prior express written consent to call Plaintiff; and that Defendant failed to honor stop-call requests to Plaintiff and the members of the class;

5. An award of reasonable attorneys' fees and costs; and

6. Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Respectfully Submitted,

GREGG RICHARDSON, individually and on behalf of all others similarly situated,

Dated: August 23, 2016

By: /s/ Stefan Coleman
One of Plaintiff's Attorneys

Stefan Coleman
Law Offices of Stefan Coleman, P.A.
201 S. Biscayne Blvd, 28th Floor
Miami, FL 33131
law@stefancoleman.com

13

(877) 333-9427

Steven L. Woodrow*
Patrick H. Peluso*
Woodrow & Peluso, LLC
3900 E. Mexico Avenue, Suite 300
Denver, CO 80210
Phone: (720) 213-0675
Email: swoodrow@woodrowpeluso.com
ppeluso@woodrowpeluso.com

*Motion for admission *pro hac vice* to be filed